```
                   UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                           Docket #12cr871
UNITED STATES OF AMERICA,                : 1:12-CR-00871-CM

                      Plaintiff,         :

   - against -                           : New York, New York
                                           November 27, 2012
SCOTT,                                   :

                      Defendant.         :

------------------------------------- :

                    PROCEEDINGS BEFORE
              THE HONORABLE JAMES L. COTT,
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:              UNITED STATES ATTORNEY'S OFFICE
                            BY:  RAHUL MUKHI, ESQ.
                            One St. Andrew's Plaza
                            New York, New York 10007
                            (212) 637-1581


For Defendant -             MARLON G. KIRTON, PC
  Scott:                    BY:  MARLON GEOFFREY KIRTON, ESQ.
                            230 Park Avenue, Suite 1000
                            New York, New York
                            (646) 435-5519




Transcription Service:  Carole Ludwig, Transcription Services
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| <u>Exhibit<br>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

3

1

2          THE CLERK:   United States of America versus Thomas

3   Scott.   Counsel, state your name for the record.

4          MR. RAHUL MUKHI:   Yes, Your Honor, Rahul Mukhi for

5   the United States, good morning.

6          THE COURT:   Hello.

7          MR. MARLON KIRTON:    For Mr. Scott, good morning,

8   Your Honor.

9          THE COURT:    Hello, everybody.   Mr. Scott, welcome

10  back.

11         MR. SCOTT:    Thank you, sir.

12         THE COURT:    You may be seated.   Mr. Mukhi, is

13  this a presumption case?

14         MR. MUKHI:   Yes, Your Honor, it is.

15         THE COURT:    And the Government seeks detention?

16         MR. MUKHI:   Yes, Your Honor.

17         THE COURT:    And do you want to elaborate a little

18  bit?

19         MR. MUKHI:   Yes, Your Honor, we seek detention

20  based on risk of flight as well as danger to the community,

21  and rest on the presumption.   With respect to danger to the

22  community, the defendant's long criminal history, which is

23  set forth in the Pre-Trial Services report by itself shows

24  the defendant is a danger to the community.   By my count,

25  he has ten total prior convictions, including two theft

4

1
2  convictions, two burglary convictions, giving a false
3  statement, resisting arrest when he was charged with
4  possessing a handgun, obtaining money by false pretenses, a
5  federal bank fraud conviction, two drug possession
6  convictions, and possession of a firearm conviction.

7        He spent at least nine and a half years in prison
8  since he was 18 years old.  Comparing that to the
9  defendant's rap sheet, it appears the only time he has not
10 been committing crimes is when he's been incarcerated.  And
11 so the defendant is not deterred from committing crimes,
12 even while he's under supervision, as evidenced by the fact
13 that he has a prior violation of supervised release.  He
14 also was on probation when he committed the instance
15 offense.

16       In the instant offense, the defendant is charged
17 in an indictment with conspiring to distribute more than
18 one 1 kilogram of heroin.  As set forth in the complaint,
19 which I handed a copy of to Your Honor's deputy, the
20 defendant conspired between 2009 and October 2012 to
21 distribute approximately 15 kilograms of heroin.

22       The evidence of the defendant's participation in
23 this conspiracy is overwhelming.  There are recordings of
24 the defendant speaking by telephone to a cooperating
25 witness and numerous conversations over the course of many

1
2  months beginning in January 2012 and ending in October 2012

3  when the defendant and his coconspirator were arrested.  On

4  that day of the arrest, there were additional in-person

5  recordings of the defendant purchasing what he believed to

6  be 2 kilograms of heroin.  That meeting was not only

7  observed and recorded by the cooperating witness, it was

8  also observed at the same time by FBI agents who were in an

9  adjoining room who viewed both video and audio

10  transmissions at the time that this transaction was taking

11  place.  Obviously, that is additional and powerful

12  corroborative evidence of what the confidential witness

13  would testify to.

14        In addition, both defendants, including this

15  defendant, gave expansive post-arrest, post-Mirandized

16  confessions.  That's set forth in the complaint.  Mr. Scott

17  admitted to his role; he admitted to conducting

18  approximately 20 heroin transactions with the cooperating

19  witness in the past.  He said there were varying amounts,

20  up to 2 kilograms of heroin at a time.

21        In addition, the defendant is facing substantial

22  penalties if he's convicted of (indiscernible) offense.

23  Under 841(b)(1)(a) the defendant faces a ten-year mandatory

24  minimum sentence.  In addition, because the defendant has a

25  prior drug felony, the mandatory minimum doubles to 20

1

2  years if the Government were to file a prior felony

3  information prior to conviction.

4        Finally, with respect to some of the other facts

5  that are laid out in the Pre-Trial Services report, the

6  defendant also admitted that he smokes marijuana, or did,

7  until he was arrested on daily basis.  He also stated that

8  he's been unemployed for nine months.  And so for those

9  reasons the Government believes that the presumption cannot

10 be overcome in this case.

11        THE COURT:   Thank you, Mr. Mukhi.  Mr. Kirton.

12        MR. KIRTON:   Your Honor, I'm going to make the

13 following bail package for the Court's consideration:

14 $250,000 personal recognizance bond, cosigned by three

15 financially responsible persons, secured by $5,000 of cash,

16 as well as the equity in the home owned by his mother who

17 lives in Baltimore, Maryland.  Strict Pre-Trial

18 supervision, home detention with electronic monitoring,

19 travel restricted to the District of Maryland as well as

20 the Southern District of New York.  Defendant to allowed

21 out only for court, attorney visits, and employment.

22        Your Honor, I'm gonna give some detail about some

23 of the cosigners that agreed to essentially stand behind

24 Mr. Scott.  One is his sister, her name is Kimberly Scott.

25 She's worked for 12 years at a company called Edwin

7

Corporation in Baltimore, Maryland.  The second person is

his cousin, Letia Scott.  She's worked for the past ten

years at a barbershop in Baltimore.  And the last cosigner,

of course, is his mother.  Her name is Sinsrae Johnson.

She owns the home in Baltimore that she's willing to put

up, at least part of the equity for the bail package in

this case.

           Essentially, Judge, there's nothing we can say

about, not much we can say about my client's record.  It is

what it is.  What I can say is that he has no open

warrants, no cases before the court to my knowledge.

Concerning the facts and circumstances of this case, Judge,

it is what it is.  The proof is what it is.  However, we

believe that the package offered by the defense is enough

to overcome the presumption in this case.

           My client did, in fact, own a business.  It said I

the Pre-Trial Services report that he worked as a cab

driver for about two years, and he mentioned the name of

the company.  The company that he mentioned is the company

that he himself owns and ran quite successfully in

Baltimore, Maryland.  In fact, unfortunately, the business

had some problems after he was I think arrested out of

state on some sort of a domestic dispute that he had with

his prior girlfriend's mother.  But he did own a business,

1   and he did run the business quite successfully.  The

2   business is based in his home town in Baltimore, Maryland.

3   

4              In fact, should he be released on bail or bond, in

5   this particular case, he will go back, reopen the business,

6   and start it up again.  The business was able to support

7   himself, even the codefendant in this case, as well as

8   members of my client's family.

9              Your Honor, for all the above reasons I submit to

10  the Court that the package that we submitted is sufficient

11  to overcome the presumption in this case, and we believe

12  that the relatives of the defendant will exercise moral

13  suasion over him to ensure his appearance in court.  And

14  also the fact that my client will be fully engaged in his

15  business, a suggestion to the court that his strong ties to

16  the community in the Baltimore area should be enough to

17  overcome the presumption before the Court.

18             THE COURT:   All right, thank you, Mr. Kirton.

19  Mr. Mukhi, anything further you want to say.

20             MR. MUKHI:   Nothing further unless the Court has

21  any specific questions.

22             THE COURT:   All right.  In a presumption case, a

23  defendant really has I think a difficult burden because

24  Congress in creating the presumption has recognized there

25  are certain kinds of cases where – did you want to say

```
 1                                               9
 2   something to your lawyer, Mr. Scott?
 3            MR. SCOTT:    I wanted to say something to the
 4   Court if possible.
 5            THE COURT:    I'm sorry?
 6            MR. SCOTT:    I wanted to say something to the
 7   Court if possible.
 8            THE COURT:    Mr. Kirton has to speak on your
 9   behalf to me.
10            MR. SCOTT:    Oh.
11            THE COURT:    Okay?  So if there's something you
12   want him to say for you before I say something further, why
13   don't you tell him what it is.
14            MR. SCOTT:    Yes.
15            (pause in the proceeding)
16            MR. KIRTON:    Well, I think he wanted me to point
17   out a few things concerning his record.  Number one, most
18   of the convictions talked about by the Government were more
19   than 20 years ago.  That's one thing.  The other thing is
20   there's a series of arrests that occurred between 2005 and
21   2007, most of which resulted in no conviction whatsoever.
22            So essentially he does have a record, but I think
23   his criminal history is somewhat overstated by the document
24   before the Court.  It really doesn't reflect the fact that
25   many of these charges resulted in no criminal conviction
```

1    whatsoever.  Secondly, many of these convictions were more

2    than 20 years old.  And the one felony that I think the

3    Government cited in 2010, first of all, was a marijuana

4    possession.  Most of that sentence was, in fact, suspended,

5    so that at the end of the day my client received a one year

6    and six month probationary sentence.

7            So, yes, he does have a record, but to a certain

8    extent, his criminal history is somewhat overstated by this

9    particular document.  He does have it, but it's not as

10   onerous as it seems based on looking at this document.

11           THE COURT:   All right, I appreciate that, and I

12   think that's a fair point.  But as you yourself said, Mr.

13   Kirton, you know, it is what it is, and I recognize that,

14   you know, if you go looking at all three pages of the

15   record, and, of course, it's never good when a defendant

16   before a court has three pages of a record, and we look at

17   each one, I understand that, you know, some charges were

18   dismissed, some charges were (indiscernible), but there

19   were a number of either pleas or otherwise guilty findings

20   along the way such that between age 18, 1991, up until as

21   recently as this year, although I don't know what this

22   particular charge is and it doesn't seem to be resolved,

23   and then, of course, the charges pending before this Court,

24   there seems to be, you know, a fairly long history, perhaps

not as ongoing or consistent I guess is your point, Mr.

Kirton.

        If the only issue before me was whether the

criminal history in and of itself disqualified him from

overcoming a presumption, I would take the point that

you're making more seriously.  But the law requires me to

look at a number of things, not just the criminal history.

I have to look at the nature and the circumstances of the

offense charged, first and foremost.

        So I'll look at the charges that Mr. Scott is

facing here.  They're serious charges.  And I look at the

evidence that appears to support those charges as outlined

in the complaint in this case and as described by Mr.

Mukhi, including admissions by the defendant himself, and

it seems to me that these are serious charges in which the

evidence is particularly strong.

        So given the charges and the way that the evidence

as well as Mr. Scott's criminal history, as well as the

fact that, as the Pre-Trial Services officer reports in his

report, that there is a substance abuse history here, and

the fact that some additional criminal activity was

undertaken by Mr. Scott while he was otherwise under

supervision or probation.  Adding all of those things

together gives me great concern about trying to overcome

1   the presumption by setting the conditions.

2       I know Pre-Trial Services always recommends

3   setting conditions whenever there are any possible

4   conditions that can be set, and it's obviously my

5   obligation under the Bail Reform Act, if there are any

6   conditions or combinations of conditions that I can set, to

7   do so.  But in this case Pre-Trial Services has recommended

8   that the defendant be detained.  I have looked carefully at

9   the Pre-Trial Services report, I have read the complaint,

10  I've heard counsels' arguments, and I'm not prepared to set

11  conditions at this time because I think much more on the

12  basis of danger than on the basis of non-appearance I don't

13  think there are conditions that I can set.

14      However, judges disagree about these things.  This

15  case has been indicted.  The case is assigned to Judge

16  McMahon, and she may disagree with this.  So, Mr. Kirton, I

17  would encourage you to seek an appeal of my decision

18  detaining your client to Judge McMahon and letting her

19  decide whether she will affirm that decision or reverse it.

20  But that is my conclusion at this time.  So the request to

21  set conditions is denied for the reasons set forth.

22  Anything further from the Government?

23      MR. MUKHI:  Nothing from the Government.

24      THE COURT:  Mr. Kirton, anything further?

```
 1                                                    13

 2              MR. KIRTON:   No, Your Honor.

 3              THE COURT:   All right, thank you.  Have a good

 4    day.

 5              MR. MUKHI:   Thank you, Judge.

 6              (Whereupon the matter is adjourned.)

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>C E R T I F I C A T E</u>

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, United States of America versus Scott, Docket #12cr871, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature_____

Date:  May 22, 2013